UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
VERNAIL BLOUNT,

                    Plaintiff,

           - against -

CITY OF NEW YORK; DETECTIVE
MICHAEL KELLY; DETECTIVE PETER
BOHRINGER; POLICE OFFICER AARON
LOHMAN; and POLICE OFFICER ERIK
NELSON,

                    Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
15-CV-5599 (PKC) (JO)

PAMELA K. CHEN, United States District Judge:

Before the Court are Defendants' motions *in limine* (1) to permit the admission of evidence of, and reference to, Plaintiff's nicknames and aliases, and (2) to dismiss Plaintiff's five claims for malicious prosecution in light of the Second Circuit's decision in *Lanning v. City of Glen Falls*, 908 F.3d 19 (2d Cir. 2018). For the reasons stated below, Defendants' motions are granted in part and denied in part.

## DISCUSSION

**I.    Evidence and References Relating to Plaintiff's Nicknames and Aliases**

Defendants seek permission to introduce evidence and elicit testimony that refers to Plaintiff by his stage name, "Moon Murder." (Defendants' Brief ("Def.'s Br."), Dkt. 75-5, at 1–3.) Defendants argue that this evidence may be necessary to clarify Plaintiff's testimony or to lay a foundation for impeachment. (*Id.* at 2.) Plaintiff's stage name is relevant, Defendants argue, because he claims to have been filming a music video at the time of one of his arrests. (*Id.*) The Court disagrees.

While it may be necessary for Defendants to introduce evidence about Plaintiff's musical performance on the day of his arrest or about his musical career more generally, Defendants have failed to demonstrate that Plaintiff's stage name has any probative value. The Second Circuit has held that a district court should not permit reference to a potentially prejudicial nickname when "identity [is] not an issue at trial, and . . . [the nickname has] no legitimate relationship to the crimes charged[,] . . . [but is] strongly 'suggestive of a criminal disposition.'" *United States v. Farmer*, 583 F.3d 131, 146 (2d Cir. 2009) (internal citations omitted). While this holding was reached in the context of a criminal case, the Court finds the Second Circuit's reasoning equally applicable in this civil context. Plaintiff's stage name bears no relationship to the issues raised by Plaintiff's § 1983 claims, and his identity is not in dispute. Nevertheless, there is a serious danger of unfair prejudice from the introduction of Plaintiff's stage name. Nine of Plaintiff's twelve claims going to trial hinge on the existence of probable cause for an arrest or prosecution, and Plaintiff's *Terry* stop claim turns on whether Defendant Police Officer Aaron Lohman had reasonable suspicion of criminal activity at the time of the stop on September 28, 2012. (Summary Judgment Order, Dkt. 66.) Plaintiff's stage name, "Moon Murder," could easily suggest to the jury that Plaintiff has a propensity for criminal activity, which could unduly influence its consideration and determination of the probable cause and reasonable suspicion elements of Plaintiff's claims. In light of this potential prejudice and the minimal relevance and probative value of Plaintiff's stage name, Defendants' motion *in limine* to permit the admission of evidence of, or reference to, Plaintiff's stage name at trial is denied.

## II.     Plaintiff's Malicious Prosecution Claims

In the guise of a motion *in limine*, Defendants also move to dismiss each of Plaintiff's five malicious prosecution claims on the grounds that the underlying prosecutions did not terminate in Plaintiff's favor. (Def.'s Br., at 3–4.) Though Defendants conceded this element in their summary

judgment briefing (Dkt. 57-2, at 10–12), they now assert that intervening decisions in the Second Circuit and the Southern District of New York render Plaintiff's malicious prosecution claims deficient as a matter of law (Def.'s Br., at 3–4).

In order to prevail on a § 1983 malicious prosecution claim, a plaintiff must prove "(1) the initiation or continuation of a criminal proceeding against [the] plaintiff; (2) termination of the proceeding in [the] plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for [the] defendant's actions." *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) (quoting *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995)). In its recent decision in *Lanning v. City of Glens Falls*, the Second Circuit clarified that federal law, rather than state tort law, defines the elements of a § 1983 malicious prosecution claim. 908 F.3d 19, 25 (2d Cir. 2018). In doing so, the Circuit reaffirmed that the "favorable termination" element of a federal malicious prosecution claim requires "affirmative indications of innocence," regardless of developments in state tort law. *Id.*

Defendants argue that the dismissals of Plaintiff's criminal prosecutions based on the suppression of evidence and speedy trial grounds cannot be terminations in Plaintiff's favor as defined by *Lanning*. (Def.'s Br., at 4.) For the reasons stated below, the Court finds that Plaintiff's criminal cases were terminated in his favor under *Lanning*, with the exception of the prosecution stemming from Plaintiff's September 28, 2012 arrest.

A. **Prosecutions Based on Plaintiff's 2012 Arrests**

State court records produced by Defendants show that the prosecutions stemming from Plaintiff's August 11, 2012 and September 28, 2012 arrests were dismissed after the trial court suppressed certain evidence. (*See* Defendants' Exhibit A ("Ex. A"), Dkt. 75-2; Defendants' Exhibit B ("Ex. B"), Dkt. 75-3, at 2.) A transcript of the criminal proceedings confirms that the

3

prosecution explicitly moved to dismiss "both matters in light of the [d]ecision" suppressing evidence. (Ex. B, at 2.) Defendants argue such a dismissal is not a termination in Plaintiff's favor.

As an initial matter, the Court notes that the argument Defendants now make regarding dismissal based on the suppression of evidence could have been raised as part of Defendants' summary judgment motion; instead, at that time, Defendants conceded the "favorable termination" element with respect to each of Plaintiff's malicious prosecution claims. While the Second Circuit's decision in *Lanning* came after the Court's summary judgment order, every case cited by Defendants in their motion *in limine* briefing for the proposition that dismissal based on the suppression of evidence does not constitute favorable termination, in fact, predates the Court's order *and* the decision in *Lanning*. Thus, while *Lanning* clarified the sources of law that govern federal claims for malicious prosecution, it did not create a defense that was unavailable to Defendants at summary judgment. Accordingly, Defendants' challenge to the favorable termination of the prosecutions stemming from Plaintiff's 2012 arrests should have been raised in summary judgment briefing. Despite Defendants' regrettable delay in asserting this argument, the Court finds it appropriate to resolve the issue before trial.

1.  Dismissals Based on Suppression of Evidence

Considering the merits of Defendants' argument, the Court finds that Defendants overread the Second Circuit's holding in *Lanning*. In that case, the Circuit clarified that an affirmative indication of innocence is required to establish favorable termination, but it did not categorically rule that a dismissal based on the suppression of evidence can never be a favorable termination. *Lanning*, 908 F.3d at 25. Rather, in finding that a dismissal in the interests of justice left open the question of the civil plaintiff's guilt or innocence, the Circuit looked to the reasons stated on the trial court record for dismissing the charges to determine whether there were affirmative indications of innocence. *Id.* at 28. There, because the criminal court expressly stated that "the

4

dismissal of [the] charges in the interest of justice was neither an acquittal of the charges nor any determination of the merits," the Circuit found that the plaintiff in *Lanning* could not plausibly allege that the proceedings were terminated in a manner indicating his innocence. *Id.* at 28–29 (internal quotations omitted).

The Second Circuit's particularized consideration of the circumstances surrounding dismissal in *Lanning* is consistent with the well-established principle that "[t]he answer to whether [a] termination is indicative of innocence depends on the nature and circumstances of the termination." *Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir. 1997). In an illustrative case, *Miller v. Cuccia*, a § 1983 plaintiff's criminal prosecution had been dismissed based on the suppression of his post-arrest statements and various evidence obtained in a search of his home. Nos. 99-7088(L), 99-7122(XAP), 1999 WL 1070084 (Table) (2d Cir. Nov. 18, 1999). Determining that the dismissal was not a favorable termination, the Circuit held that "[t]he suppression of . . . inculpatory evidence does not establish or imply [the plaintiff's] innocence *because it was not related to or based upon the reliability or unreliability of the evidence*." *Id.* at *1 (emphasis added). Thus, dismissals based on the suppression of evidence *may* constitute favorable termination when the reasons for suppression provide an indication of innocence.

Consistent with this approach, district courts considering whether dismissals based on the suppression of evidence constitute a favorable termination have looked to the circumstances surrounding the suppression and subsequent dismissal for affirmative indications of innocence. In *Debrosse v. City of New York*, the Court found that a dismissal premised on the suppression of a line-up identification was not a favorable termination. No. 13-cv-3822 (AMD) (CLP), 2017 WL 3328233, at * 6 (E.D.N.Y. Aug. 2, 2017). In doing so, the court considered the fact that "[the trial judge] specifically held that he suppressed [a witness's] line-up identification not because there

was anything suggestive about the line-up, but because Detective Gaynor did not give the plaintiff's lawyer a reasonable opportunity to appear." *Id.* Similarly, the court in *Harris v. City of New York* found that the suppression of evidence in a post-conviction proceeding was not a favorable termination. No. 15-cv-6467 (MKB), 2017 WL 59081, at *2–6 (E.D.N.Y. Jan. 4, 2017). The court expressly relied on the fact that the plaintiff did not dispute that the suppressed evidence was recovered from his person, stating that "there is no question that [the plaintiff was] guilty of criminal possession of a weapon. *Id.* at *4. The court distinguished its holding from the decision in *Smalls v. City of New York*, in which the court found a favorable termination where the plaintiff's conviction for weapon possession was reversed based on the failure to suppress improperly obtained evidence. *Id.* at *5 (analyzing *Smalls v. City of New York*, 181 F. Supp. 3d 178, 187–88 (E.D.N.Y 2016)). In *Smalls*, the suppression left only the testimony of the arresting officer that the plaintiff had possessed a gun to support the prosecution, and the plaintiff directly challenged that testimony as a false statement. *Id.* at 188. Under such circumstances, the court found that the dismissal of all charges must constitute favorable termination, as a contrary holding would allow false testimony to categorically preclude a malicious prosecution claim. *Id.*

Here, because the dismissal of the charges stemming from Plaintiff's 2012 arrests based on the suppression of evidence does not, on its face, imply Plaintiff's innocence, the Court examines the criminal court record to determine whether there are affirmative indications of Plaintiff's innocence.

2. The Prosecution Based on Plaintiff's August 11, 2012 Arrest

As to the dismissal of the prosecution based on Plaintiff's August 11, 2012 arrest, the Court finds affirmative indications of innocence sufficient to establish favorable termination. That prosecution was dismissed on April 10, 2013 after the Honorable Michelle A. Armstrong issued an order earlier that day suppressing all evidence recovered incident to the arrest. (*See* Ex. A, at

6

ECF[1] 1; Ex. B, at 2; Suppression Order, Dkt. 58-4, at 4.) In justifying the suppression of evidence, Justice Armstrong found that the sole witness at the hearing, Defendant Nelson, lacked credibility and described his testimony in support of the arrest as "pretextual." (Suppression Order, at 3.) She further found that "the record is completely devoid of any information or evidence tending to support, even by reasonable inference, the detective[']s conclusion that he observed defendant engage in conduct associated with the 'telltale signs' of a drug transaction." Justice Armstrong noted in particular that there was "no evidence, elicited at the hearing, of the defendant's residence, or the [surrounding area], being a hotbed of alleged drug activity; no evidence of the transfer of [money] from one party to the other; and no evidence of any furtive gestures or evasive behavior on the part of the defendant or his girlfriend." (*Id.* at 3–4.)

Based on the reasons given by the state court in its suppression order, coupled with the fact that Plaintiff has maintained his innocence of all charges throughout the prosecution and subsequent civil proceedings, the Court finds that affirmative indications of innocence exist surrounding the dismissal of the prosecution stemming from Plaintiff's August 11, 2012 arrest. Accordingly, the Court finds that the prosecution was terminated in Plaintiff's favor, and Plaintiff's related malicious prosecution claim will proceed to trial.

3. <u>The Prosecution Based on Plaintiff's September 28, 2012 Arrest</u>

With respect to the dismissal of the prosecution based on Plaintiff's September 28, 2012 arrest, however, the Court finds that Plaintiff cannot establish the favorable termination required to proceed with his malicious prosecution claim. Though the Queens County Criminal Court suppressed the evidence seized incident to the arrest, the reasons for the suppression were

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

apparently not recorded. (Ex. B, at 2.) Without an explanation of the reasons for suppression, the Court cannot determine whether the suppression was "related to or based upon the reliability or unreliability of the evidence." *Miller*, 1999 WL 1070084 (Table) at *1. Absent such an affirmative indication of innocence, "the government's failure to proceed does not necessarily 'impl[y] a lack of reasonable grounds for the prosecution.'" *Lanning*, 908 F.3d at 28 (quoting *Conway v. Village of Mount Kisco*, 750 F.2d 205, 215 (2d Cir. 1984). Accordingly, the dismissal of Plaintiff's case based on the suppression of evidence alone is not an affirmative indication of innocence.

Because the reasons for the trial court's suppression order relating to evidence seized in the September 28, 2012 arrest remain unclear, Plaintiff has not established that the case was favorably terminated. Thus, Plaintiff's related malicious prosecution claim must be dismissed.

**B.     Prosecutions Based on Plaintiff's 2013 Arrests**

The state court records produced by Defendants also show that the prosecutions stemming from Plaintiff's June 8, 2013, July 5, 2013, and August 16, 2013 arrests were dismissed by the Queens County Criminal Court on speedy trial grounds. (Exhibit C ("Ex. C"), Dkt. 75-4, at ECF 1–3.) Defendants argue that *Lanning* requires dismissal of Plaintiff's malicious prosecution claims based on these prosecutions because a dismissal on speedy trial grounds is not a favorable termination. They cite to the Southern District of New York's decision in *Thompson v. City of New York*, the only post-*Lanning* case to address this issue, in which the court held that "[t]he dismissal of [a] case on speedy trial grounds does not affirmatively indicate [the plaintiff's] innocence, as required under Section 1983." No. 17-cv-3060 (DLC), 2019 WL 162662, at *4 (S.D.N.Y. Jan. 10, 2019). Defendants argue that this "clearly established recent law" means that Plaintiff cannot satisfy the favorable termination element of his malicious prosecution claims. However, based on its reading of *Lanning*, the Court concludes that Defendants and *Thompson* mistake the scope of the Second Circuit's decision.

8

Distilled to its essence, *Lanning* holds that New York state tort law does not define or limit the scope of liability under § 1983 for malicious prosecution, except to the extent that New York law reflects the traditional common law. 908 F.3d at 26. In reaffirming that its prior decisions in malicious prosecution cases requiring affirmative indications of innocence—rather than New York state cases that only require dismissal to be "consistent" with innocence—continue to govern § 1983 claims, the Second Circuit explicitly approved of its decision in *Singleton v. City of New York*, 632 F.2d 185 (2d Cir. 1980). *Lanning*, 908 F.3d at 25–26 ("Thus, in [*Singleton*], our seminal decision on § 1983 malicious prosecution claims, we did not mechanically apply the law of New York State."). That decision "'adopted and applied' the traditional common law of malicious prosecution to the parallel federal constitutional claim brought under § 1983." *Id.* (quoting *Singleton*, 632 F.3d at 195). As *Lanning* makes clear, "the dismissal of a prosecution on speedy trial grounds is a favorable termination" under the traditional common law. *Id.* at 27 n.6 (citing Restatement (Second) of Torts § 660 cmt. d (Am. Law Inst. 1977). This alone is sufficient to defeat Defendants' motion.

Worse yet for Defendants, the Second Circuit expressly held prior to *Lanning* that a speedy trial dismissal *does* constitute favorable termination for purposes of a § 1983 malicious prosecution claim. *See Murphy v. Lynn*, 118 F.3d 938 (2d Cir. 1997). In *Murphy*, the Second Circuit stated that "dismissals for lack of timely prosecution should generally be considered, for purposes of a claim of malicious prosecution, a termination favorable to the accused." *Id.* at 950. Far from overturning this holding, the *Lanning* decision twice cites *Murphy*'s analysis approvingly. *Lanning*, 908 F.3d at 27, 27 n.6. Thus, *Lanning* makes clear that, as the Circuit consistently held pre-*Lanning*, dismissals on speedy trial grounds are terminations in the favor of the accused.

While *Lanning* may raise the bar for establishing favorable termination under § 1983 in certain cases, the dismissal of a prosecution on speedy trial grounds in this case easily clears that bar. Accordingly, Plaintiff has met his burden to establish favorable termination as to the prosecutions stemming from his three arrests in 2013, and those malicious prosecution claims will proceed to trial.

## CONCLUSION

For the reasons stated, Defendants' motions are granted in part and denied in part. The following claims will proceed to trial:

- Second Claim – Malicious Prosecution as to Defendant Nelson based on August 11, 2012 Arrest
- Fourth Claim – False Arrest as to Defendant Lohman based on September 28, 2012 Arrest
- Seventh Claim – Illegal Stop and Frisk as to Defendant Lohman based on September 28, 2012 Arrest
- Ninth Claim – False Arrest as to Defendants Kelly and Bohringer based on June 8, 2013 Arrest
- Eleventh Claim – Malicious Prosecution as to Defendant Kelly based on June 8, 2013 Arrest
- Thirteenth Claim – Excessive Force as to Defendants Kelly and Bohringer based on June 8, 2013 Arrest
- Sixteenth Claim – False Arrest as to Defendant Kelly based on July 5, 2013 Arrest
- Eighteenth Claim – Malicious Prosecution as to Defendant Kelly based on July 5, 2013 Arrest
- Twentieth Claim – Excessive Force as to Defendant Kelly based on July 5, 2013 Arrest
- Twenty-Second Claim – False Arrest as to Defendants Kelly and Bohringer based on August 16, 2013 Arrest
- Twenty-Fourth Claim – Malicious Prosecution as to Defendant Bohringer based on August 16, 2013 Arrest

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 5, 2019
       Brooklyn, New York